[No. 514. Decided February 7, 1893.]

THEODORE W. McCONNELL AND J. W. THARRINGTON, *Respondents*, v. DAVID KAUFMAN, *Appellant*.

ATTACHMENT — EXCESSIVE LEVY — EFFECT OF JUDICIAL SALE.

Where an attachment has been levied upon the goods of a debtor and a sale made thereof under order of court, the title to the goods passes to the purchaser at such sale, although the levy may have been excessive and the debtor may have made a sale of such goods between the time of the levy and of the judicial sale.

*Appeal from Superior Court, King County.*

*P. P. Carroll*, and *Thomas R. Shepard*, for appellant.
*Thompson, Edsen & Humphries*, for respondents.

The opinion of the court was delivered by

STILES, J.— On December 28, 1889, the firm of McConnell, Parker & Co. had had their property attached by the sheriff of King county at the suit of the Leak Glove Manufacturing Company for the recovery of $494.65. Two days later, and before any other attachments had been placed in the sheriff's hands, the plaintiffs in this action took from McConnell, Parker & Co. a bill of sale of the goods levied upon by the sheriff, and then in his hands. The plaintiffs thereupon notified the sheriff of the transfer of the property to them, and demanded that he set aside enough goods to satisfy his attachment and release the remainder to them. This he refused to do, and the goods remained in his possession. Subsequently other attachments were delivered to the sheriff for levy, and they also were levied upon these same goods. In all some seven or eight attachments were placed in the hands of the sheriff.

At a subsequent date, upon a showing by attaching creditors that the property, which consisted of a stock of boots

and shoes, was in great danger of deterioration in value by reason of its situation, which was in a tent where it was greatly exposed to fire and dampness, the court ordered the sheriff to sell the entire lot and hold the proceeds to await such judgments as might thereafter be entered in the attachment suits. Under this order the sheriff sold the property to the defendant in this action for $2,500.

At the sale the plaintiffs gave notice that they claimed to own the goods, and that any person buying them would get no title. This action is brought against the purchaser at the sheriff's sale for the value of the goods, less certain amounts either received by the plaintiffs themselves or paid for their use.

Upon the trial it appeared that the manner in which the plaintiffs obtained their claim to be the owners of the goods was as follows: On December 28, 1889, and for some time theretofore, McConnell, Parker & Co. had been indebted to the plaintiffs upon various notes, and both before and after the attachment of the Leak Glove Manufacturing Company, plaintiffs had been pressing for a settlement of their demands. On the second day after the attachment was levied, it was agreed between plaintiffs and McConnell, Parker & Co. that the latter should sell and deliver to the plaintiffs the goods then in the sheriff's hands, in consideration for the surrender to them of all of the evidences of indebtedness held by the plaintiffs, and in consideration of the plaintiffs' notes payable at a future period, in the sum of $2,190. It was also agreed by the plaintiffs that they would pay off and satisfy the claim of the Leak Glove Manufacturing Company and the claims of certain other creditors of McConnell, Parker & Co. Plaintiffs endeavored to raise money to pay off the Leak Glove Manufacturing Company's attachment, but were unable to do so, and it remained unpaid until satisfied by the proceeds of the attachment sale.

Subsequent to the sale of the goods by the sheriff the at-

taching creditors obtained judgments against McConnell, Parker & Co., and the Leak Glove Company's attachment was satisfied in full, and the remainder of the $2,500 was paid upon other judgments.

These matters appeared from the plaintiffs' case, and at its conclusion the defendant moved the court to direct a verdict in his favor upon the following ground, viz.:

"That by reason of the order read in evidence, directing the sheriff to make a sale of the property as in case of execution under the attachments, and to hold and apply the proceeds according to subsequent judgments, the title of the purchaser at the sheriff's sale related back to the lien of the first attachment, which antedated the bill of sale and transfer from the attachment debtors to the plaintiffs, and the sale therefore passed a perfect title to the whole property."

This motion the court denied, and inasmuch as, in our opinion, it should have been granted, and, if granted, would settle the entire controversy, we shall confine the discussion of the case to this single point.

For the sake of the argument it will be conceded that a judgment debtor may make a valid sale of property in the hands of an officer under an attachment so as to vest in the purchaser the title to the property, subject to existing attachment liens, so as to cut off any subsequent attachment creditor's rights; and it will be conceded also that in this case the levy of the sheriff was excessive. The amount of the Leak Glove Manufacturing Company's claim was only $494.65, but by the time the judgment was obtained it took $859.05 to satisfy it. The property was probably worth six or seven thousand dollars. Undoubtedly a debtor, in case of an excessive levy, is entitled to relief, and his successor in interest would be entitled to the same relief.

But the question is whether, the attachment being a valid one, the excessiveness of the levy would under any circumstances render it void as to all or any part of the property

levied upon, so that a sale under it would prevent the title passing to the purchaser, in whole or in part.    In this case we have seen that the plaintiffs contracted with McConnell, Parker & Co. to pay off and satisfy the Leak Glove Company's attachment.    This they did not do, nor had they any present ability to do so except through the efforts which they might make and did make to borrow the money elsewhere sufficient to carry out their agreement.    Therefore, the levy of the Leak Glove Manufacturing Company continued, unless the plaintiffs' act in demanding of the sheriff that he release all but sufficient of the goods to satisfy the attachment, was sufficient to defeat the entire levy.

The statute requires the sheriff in attachment cases to take and retain in his possession at least fifty per cent. more than the amount which the plaintiff in his affidavit claims to be due (Code Proc., § 296), but there is no provision of the statute specifying the method by which it can be determined whether a levy is excessive or not. Obviously neither the debtor nor his successor in interest in such a case would have a right to set up his judgment as the criterion by which property should be released. Neither can the sheriff be held to make a selection which would bind the creditor, since if in any such case the sheriff takes upon himself to say when he has sufficient property, he will be liable to the attachment creditor if he fails to retain enough to meet the requirement of the statute. The only reasonable way that presents itself in such cases is, that the debtor or his successor in interest should make an application to the court from which the attachment issued for relief.    This was the proceeding taken in *Hughes v. Tennison*, 3 Tenn. Ch. 641.

The sheriff, of course, must take his chance that his levy is so excessive as to become oppressive, but we are aware of no case which holds that the excessiveness of the levy, even if it amounted to oppression, would render the whole

44—5 WASH.

levy void so that a sale would not pass title to the purchaser. Nor can it be said that the levy would be good as to the proper amount, and void as to the remainder; for the writ covers every article taken under it until there is a specific release. Failing to take legal steps to reduce the amount of the levy, the debtor must be taken to have elected to rely upon his remedy against the sheriff for damages as for an excessive levy; and his vendee is in precisely the same position.

The next point is, that the order made by the court for the sale of the goods was not made in the Leak Glove Manufacturing Company's case, but was made in another case which was the last of the series of attachments issued by the creditors of McConnell, Parker & Co. The fact about that is, however, that, although the motion for the order of sale was made and the order was entered in another case, the Leak Glove Manufacturing Company and all the other attaching creditors of McConnell, Parker & Co. were brought into court and actually joined in moving the court to make the order, and the order in terms recognized all of the attachment cases, including that of the Leak Glove Manufacturing Company, and directed the property to be sold and the proceeds held to await judgments. At most this could only be said to have been an irregular order.

The statute (Code Proc., § 303) provides:

"Whenever it shall be made to appear satisfactorily to the court or judge that the interest of the parties to the action will be subserved by a sale of any attached property, the court or judge may order such property to be sold in the same manner as like property is sold under execution."

Now we take it that the plaintiffs, having bought from McConnell, Parker & Co. after the property was attached, were bound to know that unless they protected themselves by furnishing the sheriff with a bond to release the goods entirely, or unless they paid the Leak Glove Manufactur-

ing Company's claim, the court was liable, in the ordinary course of proceeding, to make an order for the sale of these goods. They bought with notice that such a transaction might take place, and were fully bound by the order it made, since it could not be admitted for a moment that a debtor might defeat the power of the court to make the order by transferring his title to the property attached after a writ had been levied. The sheriff sold under the order thus made, and the plaintiffs appeared at the sale and gave notice which informed purchasers that no title to these goods would be obtained by a purchaser at that sale. This information was untrue, as we have seen, since the lien of the Leak Glove Company's attachment, if not the other liens, continued. The sale made was neither void nor voidable, but passed the title to the defendant at the price which he bid, and if there were irregularities in connection with it, it is the sheriff that is responsible and not the defendant.

Inasmuch as the error made was in refusing to direct a verdict for defendant, there must be a new trial of the case, unless the respondent will consent to the entry of a non-suit instead, within thirty days from the filing of this opinion.

Judgment reversed, with costs to appellant.

HOYT, ANDERS and SCOTT, JJ., concur.

DUNBAR, C. J., dissents.