RED EAGLE et al. v. CANNON et al.

No. 31575. May 22, 1945.

Rehearing Denied March 12, 1947.

Second Petition for Rehearing Denied March 18, 1947.

*177 P. 2d 841.*

Jesse J. Worten, of Pawhuska, and N. E. McNeill, of Tulsa, for plaintiffs in error.

John L. Arrington, H. P. White, L. M. Colville, MacDonald & Files, and Robert Stuart, all of Pawhuska, Welcome D. Pierson, of Oklahoma City, and L. R. Stith, W. J. Mahan, and D. E. Johnson, all of Fairfax, for defendant in error.

ARNOLD, J. A motion to dismiss this appeal was denied by order duly entered on February 8, 1944. This motion has been renewed in the brief of appellees. The principal ground of the motion is the alleged insufficiency of the petition in error, both in form and sub-

stance, to confer jurisdiction on this court. Reliance is placed on the decision in Marvel v. White, 5 Okla. 736, 50 P. 87, wherein the appeal was dismissed for insufficiency of the petition in error. An examination of the opinion cited discloses no similarity of the petition in error there considered to the one in the instant case. Here the petition in error is properly entitled, the parties to the appeal are properly designated, the court in which the suit was filed and the nature of the relief sought are clearly stated. The case-made attached to and made a part of the petition in error (12 O.S. 1941 § 956) shows final judgment in that court. The petition in error alleges four distinct grounds of error in the proceedings leading to that judgment, and contains a prayer for relief in this court from the judgment so entered.

Other grounds of the motion to dismiss do not meet the requirements specified in the first paragraph of the syllabus to the case of Sawyer v. Sawyer, 182 Okla. 348, 77 P. 2d 703, so the motion to dismiss is again denied.

The parties to this proceeding in error will be herein referred to as designated in the trial court.

This is a suit in equity commenced on the 24th day of March, 1943, by plaintiffs filing in the district court of Osage county, Okla., their petition, in the first count of which it was alleged in substance that on September 30, 1935, in the county court of Osage county, Okla., in a probate proceeding there pending, it was ordered, adjudged, and decreed by the court that the last will and testament of Mo-se-che-he, Osage Allottee No. 34, be denied probate for the reason that said will was executed prior to the marriage of decedent and that her subsequent marriage revoked the will as a matter of law; that this decree of the county court was based upon a ceremonial marriage between Mo-se-che-he and Jack Rogers (whose true name is Albert J. Fierro) entered into on May 19, 1934, after Jack Rogers had procured a decree in the district court of said county on March 23, 1934,

annulling his prior marriage with Hattie Logan Davis; that thereupon the said county court appointed W. C. Tucker and Leah Duncan as joint administrators of the estate of Mo-se-che-he, deceased; that said Jack Rogers, in asserting to said county court the validity of his said marriage to Mo-se-che-he, Osage Allottee No. 34, based upon the decree annulling his marriage with Hattie Logan Davis, was guilty of willful and fraudulent concealment of his true status in this:

"(a) That said Albert J. Fierro, on the 10th day of July, 1931, in Galveston, Texas, entered into a valid marriage contract with Rachel B. Atkins, as evidenced by a copy of said marriage certificate and ceremony attached hereto, marked 'Exhibit B' and made a part hereof, which said marriage contract remained in full force and effect during all the times hereinafter mentioned and was never dissolved until a date long after the death of Mo-se-che-he"

—and that had it not been for the fraudulent concealment of these facts said county court would not have found as a matter of law that the purported marriage of Jack Rogers (whose true name is Albert J. Fierro) with Mo-se-che-se, Osage Allottee No. 34, revoked her will made prior to said purported marriage; that the true facts concerning the marital status of the said Jack Rogers (whose true name is Albert J. Fierro) were unknown to these plaintiffs, and could not be ascertained by them by the exercise of reasonable diligence prior to the hearing on the probate of said will in said county court, and were only discovered by these plaintiffs on or about the 1st day of February, 1943, prior to the commencement of this suit; that said facts concerning the marital status of Jack Rogers (whose true name is Albert J. Fierro), and so fraudulently concealed by him, are extraneous to any issue of fact or law presented to said county court on the hearing for the probate of said will, but if known to said court at said hearing would have been controlling and conclusive on the question of the invalidity of the purported marriage of

Mo-se-che-he, Osage Allottee No. 34, to Jack Rogers (whose true name is Albert J. Fierro). A copy of the marriage license and certificate of marriage of Albert J. Fierro and Rachel B. Atkins, as recorded in the office of the clerk of the county court, Galveston county, Texas, on the 10th day of July, 1931, is attached to the petition of plaintiffs as an exhibit.

A second count of the petition was a substantial reiteration of the first count and charged knowledge of and participation by the other defendants in Jack Rogers' (Fierro) fraudulent concealment of his marital status. An amended petition was filed, but it did not change the issues tendered in the original petition.

Plaintiffs prayed that the judgment of the county court of Osage county on September 30, 1935, be vacated and set aside, and that the order appointing administrators of said estate be set aside and annulled, and for all proper relief.

The record discloses that the proponents of the will appealed to the district court of Osage county and to this court, both appeals resulting in the affirmance of the judgment of the county court denying probate of the will. The opinion of this court affirming that judgment is reported in 188 Okla. 228, 107 P. 2d 999. Before stating the contentions of defendants herein it is well to examine that former opinion of this court to ascertain what issues were then presented and determined. We find the major issue thus stated:

"The principal question involved is whether the will executed by Mo-se-che-he while a single woman was revoked by her subsequent marriage."

The next issue determined is thus stated:

"The trial court found that the will was executed in due form; that Mo-se-che-he was mentally competent and that there was no duress, coercion, nor undue influence. These findings are supported by the evidence."

The third question determined is thus stated:

"There is clear, absolute, and uncontradicted evidence that Mo-se-che-he and Jack Rogers, Albert Fierro) entered into a ceremonial marriage contract in conformity with law, on the 19th day of May, 1934, and that they lived together as man and wife until the death of Mo-se-che-he. The trial court so found. We must and do hold that the will of Mo-se-che-he was revoked unless said marriage was void."

In determining this third question this court said:

"In this case Jack Rogers did commence an action in the district court to annul and set aside his marriage to Hattie Logan Davis. He commenced the action and obtained personal service within six-months period, and later obtained a decree setting aside and annulling said marriage.

"The uncontradicted evidence is that both parties to said decree took advantage thereof and redognized its validity and both have twice remarried since the decree was entered.

"Under the authorities above cited, we are of the opinion that the district court under its general jurisdiction granted by the Constitution had power and authority to enter the judgment and decree, and that said decree is not void on the face of the record."

These are the issues of fact and of law determined in that opinion.

In the instant case the trial court sustained the separate demurrers and the separate motions to dismiss based on pleas of res adjudicata, estoppel by judgment, and limitations interposed by the various defendants, and from the order dismissing the action the plaintiffs appeal.

Contentions of defendants, the form of their pleadings, and their construction thereof are thus stated in their brief on page 38:

"To the petition and amended petition of plaintiffs some defendants below filed demurrers raising the question of the statute of limitations and want of

allegation of sufficient facts to invoke the jurisdiction of the court to grant the relief prayed for. Other defendants filed separate answers by way of pleas in bar, to wit, res judicata; estoppel by judgment; statute of limitations; and want of jurisdiction in the court of the subject matter. And, coupled therewith was a motion to dismiss. The answers and motions to dismiss may well be treated as demurrers. And, the motions to dismiss may well be considered as motions for judgment on the pleadings."

The first question presented under the demurrers is that of limitations. It is contended that since the proceeding in the county court was for the probate of a will, therefore, 58 O.S. 1941 § 67 is applicable, which reads:

"If no person, within one year after the probate of a will, contests the same or the validity thereof, the probate of the will is conclusive, saving to infants and persons of unsound mind, a like period of one year after their respective disabilities are removed."

In support of this contention defendants cite and quote from In re Turinsky's Estate, 187 Okla. 371, 103 P. 2d 86, which was an appeal from a judgment of a county court refusing to reopen a probate proceeding on an application filed more than one year after a will was admitted to probate. Other authorities cited on this question are considered likewise inapplicable to the fact situation here presented. When a will is admitted to probate it confirms the title of devisees and legatees whose interests in the estate became vested at testator's death. (84 O.S. 1941 § 175). The limitation relied on by defendants is intended to make those vested interests secure after a period deemed by the Legislature to be a reasonable time for attacking the probate of the will. In the instant case the will was denied probate and the estate is in process of administration. No order of distribution has been entered. This is an independent civil action to which 58 O.S. 1941 § 67 has no application.

Defendants' other contention under the demurrer is that the petition does not state facts sufficient to constitute a cause of action. By their demurrers defendants admitted all facts well pleaded in the petition.

It is thus admitted that on July 10, 1931, Albert J. Fierro and Rachel B. Atkins were lawfully married in Galveston, Tex., as shown by the marriage record from Galveston county, attached to the petition as an exhibit, and that this marriage was not dissolved until long after the death of Mo-se-che-he.

Lawful marriage creates both a relation and a status. The marriage relation may be severed by abandonment of one of the spouses or by mutual agreement to live separate and apart. The marital status can be terminated only by decree of a court of competent jurisdiction or by death of one of the parties.

It is argued by defendants that because Jack Rogers in his contest petition alleged his true name to be Albert J. Fierro, plaintiffs here, proponents of the will, should have discovered this prior marital status and pleaded the same against his claim as surviving husband of Mo-se-che-he. This argument is beside the point. The point is that plaintiffs in this action allege that these facts were only discovered a few months before commencing this action, and this fact is admitted by defendants.

It is admitted by defendants, because well pleaded in plaintiffs' petition, that this prior and then subsisting marital status of Albert J. Fierro was concealed from the court by Jack Rogers for the fraudulent purpose of misleading the court and the proponents of the will as to the validity of his marriage with Mo-se-che-he, and that the other defendants here acquired knowledge of these facts during the progress of the will contest and fraudulently acquiesced in their concealment for their own benefit.

Defendants argue and cite numerous authorities to the effect that it is not fraudulent to conceal from an adver-

sary evidence which would defeat one's claim or defense. It is one thing to conceal evidence from an adversary, but it is quite a different thing to conceal material facts from a court and thus lead the court into the commission of fundamental error on a vital issue in a case.

In the county court on the hearing for probate of the will of Mo-se-che-he and on the petitions in contest thereof the vital issue was whether the testatrix was lawfully married to Jack Rogers (Fierro). On this vital issue depended the validity or invalidity of the will, because the court found that the testatrix was competent and that she executed the will without coercion, duress, or undue influence. The only evidence presented to and considered by the court on the vital issue was that concerning the marriage of Jack Rogers with Hattie Logan Davis, and the annulment of that marriage by the district court of Osage county. Upon this evidence the court declared the will revoked as a matter of law under the provisions of 84 O.S. 1941 § 108. It is indisputable that if the court had been advised of the prior and then subsisting marital status of Jack Rogers (Albert J. Fierro) in the State of Texas, here admitted, it would not have declared his marriage with Mo-se-che-he valid and that said will was revoked by operation of law. In Price et al. v. Clement, 187 Okla. 304, 102 'P. 2d 595, this language is used in the first paragraph of the syllabus:

" . . . It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion."

In Jones et al. v. Snyder, Guardian, 121 Okla. 254, 249 P. 313, the fourth paragraph of the syllabus reads:

"If by fraud and misconduct one is granted an unfair advantage in proceedings at law, where the court has been deceived and thereby made an instrument of injustice, equity will interfere to prevent the perpetrator from reaping the benefit of the advantage thus unfairly gained.

"In such case it matters little as to the mode or maner in which fraud as effected. A court of equity looks to the effect and asks if the result is a consequence of the fraud."

—and in paragraph 6 it was said:

"Where a court is deceived and misled by a fraudulent concealment of jurisdictional facts, such fraud would naturally not appear in the record and necessarily be extraneous thereto."

One of the three elements of jurisdiction is the power and authority to render the particular judgment which was in fact rendered. Except for the concealment from the court of the then subsisting marital status of Jack Rogers under the name of Fierro in the State of Texas, the county court would have been without power and authority to revoke the will of Mo-se-che-he because of her purported marriage to Jack Rogers. This infirmity of jurisdiction persisted in the district court and in this court on successive appeals as a result of the fraudulent concealment inherent in the record.

In Harjo v. Johnson, 187 Okla. 561, 104 P. 2d 985, paragraph 3 of the syllabus reads:

"Fraud, extraneous of the record, by which the court was imposed upon in the proceeding, and by which the party complaining was prevented from having his interest fairly presented or fully considered by the court, vitiates a judgment and will authorize a court to vacate it"

—and in paragraph 6 of the syllabus it was said:

"Where there was such fraud in the procurement of a judgment as would authorize a court to vacate it, and such fraud is discovered at a time when the remedies provided by statute to vacate or modify a judgment are unavailable, relief may be had by a direct suit in equity."

In reference to their plea of res judi-

cata and their plea of estoppel by judgment, coupled with motions to dismiss, defendants say that these may well be considered as demurrers or as motions for judgment on the pleadings. If they be considered as demurrers, they are disposed of by what has been heretofore said with reference to the demurrers so denominated. If they be considered as motions for judgment on the pleadings, they make the same admissions as do the demurrers and are therefore already disposed of. On a trial of the issues of fact presented by the allegations of plaintiffs' petition and amended petition, the proof may or may not sustain those allegations, but plaintiffs are certainly entitled to have an opportunity of presenting such evidence as they are able to produce to sustain those allegations. The issues presented by the allegations of plaintiffs have not heretofore been heard and determined by any court upon their merits. In the interest of justice and of fair play to those whom Mo-se-che-he designated as the beneficiaries of her estate, their claims herein made tending to establish the validity of the will should be heard and determined upon the evidence which they are able to produce.

Reversed and remanded, with directions to the trial court to overrule the demurrers of defendant and their motions to dismiss and to grant plaintiffs a new trial.

HURST, C.J., and RILEY, OSBORN, GIBSON, and ARNOLD, JJ., concur. DAVISON, V.C.J., and BAYLESS, WELCH, and CORN, JJ., dissent.