**ARKLA EXPLORATION COMPANY, Appellant,**

v.

**George SHADID et al., and the Corporation Commission of the State of Oklahoma, Appellees.**

**No. 62528.**

Court of Appeals of Oklahoma, Division No. 3.

Nov. 26, 1985.

Released for Publication by the Court of Appeals Dec. 27, 1985.

---

4. *In re Fletcher's Estate,* 308 P.2d 304 (Okla. 1957).

5. *Noble v. Noble,* 205 Okla. 91, 235 P.2d 670, 26 A.L.R.2d 1200 (1951)

H.B. Watson, Jr., Stephen R. Pitcock, Oklahoma City, for appellant.

Randel Shadid, Edmond, Coy Shadid, Altus, for appellees.

HANSEN, Judge:

Appellant herein, Arkla Exploration Company, is the named well operator of a force pooled drilling and spacing unit in Roger Mills County. Appellee mineral owners, (Shadids), elected to participate in the drilling of the unit well. The pooling order provided the estimated well costs for completed production to be $3,011,740.00. This estimate was based on completion of a single zone in the Morrow. That order stated in part as follows "... in all events, such owner's costs in said well shall not exceed its proportionate part of the actual or the reasonable cost thereof which shall be determined by the Commission in the event there is a dispute as to such costs; ...".

When the well was originally logged, Arkla found two zones in the Morrow that showed potential production. The operators however had many problems isolating the two zones. They perforated the upper zone but when they attempted completion in the lower difficulty resulted. The operators spent about three months attempting to correct a mechanical failure in the downhole assembly. More complications developed. The well was ultimately plugged and abandoned. Total costs of the disaster came to $6,249,294.88.

Arkla as operator of the well paid the creditors and then billed the participating working interest owners. The Shadids, owners of 5% of the working interest, refused to pay their proportionate share of the expenses in excess of the original estimated costs. Arkla then filed an application with the Corporation Commission requesting the Commission issue an order determining the fair and reasonable costs of drilling and completing the unit well.

On hearing before the trial examiner Arkla presented two witnesses. Only David Wright a senior drilling engineer testified to the reasonableness of the additional costs. He attributed a substantial portion of the cost overruns to Arkla's attempted completion of the lower Morrow and the fishing job resulting therefrom. Mr. Wright was not primarily responsible for the drilling of the well; that person had died. The Shadids presented a witness who was a geologist and log analyst. He stated from a review of the logs the zone appeared to be 45% to 50% water saturated. On this basis he felt it was not reasonable to test that zone.

The examiner issued his recommendation that the reasonable well cost be set at $3,108,740.00.[1]

Arkla filed exceptions to the report. After oral argument, the oil and gas referees reversed the examiner's recommendation

---

**1.** The additional $97,000.00 over the estimated cost represented additional expenses incurred in the building location.

and set a figure of $6,043,311.21 as reasonable costs.[2]

The Shadids filed exceptions and the *en banc* Commission ultimately reversed the referee's report and reinstated the trial examiner's findings. Arkla appeals.

■ By electing to participate in the drilling of the well the Shadids became obligated to pay their proportionate share of the costs. 52 O.S.Supp.1985 § 87.1(e) provides these costs must be limited to actual expenditures required, not in excess of what are reasonable. It also provides in the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon.

■ A cost estimate in a pooling order is a projection of reasonable expenses to be charged and is subject to adjustment. If a dispute arises, as here, the Commission has primary jurisdiction to adjudicate the liability to be attached to the interest holders.[3]

*W.L. Kirkman, Inc. v. Oklahoma Corporation Commission,* 676 P.2d 283 (Okla. App.1983) stated an evaluation of proper costs encompasses two determinations. First the Commission must determine whether the actual expenditures were required. Secondly it must examine those expenditures to decide whether they are reasonable. Thus a proper cost is one that is required and reasonable.

The Commission found the proposed well costs in the amount of $6,249,294.00 were not reasonable. It found Arkla made imprudent zone decision for the well completion and failed to meet its burden of proof to show the well costs in excess of the estimated costs were reasonable except for the additional $97,000.00 in overruns to build the location. It added the $97,000.00 to the estimated costs for its finding of $3,108,740.00 as the reasonable cost.

Article IX, Section 20 of the Oklahoma Constitution provides that the Appellate Court shall review an order of the Commission and determine whether "findings and conclusions of the Commission are sustained by the law and substantial evidence". *El Paso Natural Gas Company v. Corporation Commission,* 640 P.2d 1336 (Okla.1981) further delineated the test by holding "the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight".

Using this standard of review this Court must make two determinations. Was the Commission's finding Arkla was imprudent in attempting to complete the lower Morrow supported by substantial evidence? Second, was the Commission's method of determining the reasonable costs supported by substantial evidence?

Arkla presented Mr. Wright, one of its own employees with limited actual experience in the particular well to testify as to the reasonableness of the attempt to complete into the lower Morrow. It presented evidence, substantiated by invoices, of the charges it assessed in connection with the well. Mr. Wright, although contradicting himself on cross examination, did state the charges were reasonable and that it was a prudent decision to attempt to complete the lower region.

All working interest owners must assume the risk of loss that comes from bad judgment. All that was required of Arkla was good faith and reasonable skill and diligence. It would not be liable for a loss occasioned only by honest error or bad judgment.[4] There was no evidence Arkla acted in bad faith. Indeed it is inconceivable that an operator owning over 50% of a well would deliberately expend such a considerable sum on exploring a zone if it did not have reasonable hopes for production therefrom.

---

**2.** Referees deleted certain overruns from the actual costs because Arkla did not present supporting testimony or back-up invoices on these items. However there appears to be a discrepancy in the referees report as to whether they recommended $6,120,064.00 or $6,043,311.21 as the reasonable cost.

**3.** *Crest Resources v. Corporation Commission,* 617 P.2d 215 (Okla.1980); *Stipe v. Theus,* 603 P.2d 347 (Okla.1979).

**4.** *Great Western Oil & Gas Co. v. Mitchell,* 326 P.2d 794 (Okla.1958).

The testimony in conjunction with the invoices was sufficient to make a prima facie case as to the cost of the well. If the Shadids had presented no evidence, the Commission would have been obligated to find in Arkla's favor for the total costs verified by the invoices. It would be unrealistic for Arkla to be required to present expert testimony from outside sources of the reasonableness of each individual expense.

However, the Shadids presented substantial evidence through their witness that it was imprudent to test the lower zone because all indications were that it would not be feasible to complete it because of water production.

■ Therefore Arkla's contention there was no substantial evidence to support Commission's finding it was unreasonable to attempt this completion must fail. The Commission's expertise is vitally important in this area. As articulated by Judge Means in *Kirkman*, the Courts have neither the technical knowledge nor the resources to determine the appropriateness of Arkla's expenditures or decisions. The portion of the order finding Arkla made imprudent zone decisions is supported by substantial evidence and must be affirmed.

■ However we find Commission's means of determining reasonable costs by using the estimate set out in the pooling order as a base to be error. The oil and gas referees, on the other hand, subtracted unsupported costs from the actual costs. We find this to be the better practice.

The burden shifted to the Shadids to indicate what costs were unreasonable and should be subtracted from the actual costs. We cannot assume all costs over the estimate resulted from Arkla's attempted completion in the lower Morrow. The Commission adopted the trial examiner's findings without setting out supporting facts. It reduced the actual costs by $3,140,554.88 without a finding this amount was the cost of the imprudent exploration or was otherwise unreasonable.

Arkla is entitled to an accounting of what costs the Commission attributed to the abortive downhole attempt. These costs should be subtracted from the actual costs submitted by Arkla. Also where Arkla failed to provide supporting documentation for a charge, the Commission correctly disallowed the charges. But the Commission must show this Court how it arrives at its figure for reasonable costs.

Accordingly we affirm the Commissions finding the downhole attempt was unreasonable. We reverse that portion of the Commission's order setting the reasonable costs at $3,108,740.00 and remand to the Commission for a specific finding of what costs must be subtracted from the actual cost.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

HUNTER, P.J., and HOWARD, J. concur.